GARY MONTGOMERY AND MARION L. MONT-
GOMERY *v.* STATE OF MARYLAND

[No. 238, September Term, 1967.]

*Decided July 2, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Robert L. Carson* for appellants.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert W. Baker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellants were indicted on 14 October 1964, tried in the Criminal Court of Baltimore on 25 November 1964, convicted by the court without a jury of robbery with a deadly weapon and each sentenced to imprisonment for a term of 20 years. Each noted a timely appeal. On 12 January 1966 the Court of Appeals remanded the cases for further proceedings under the decision in *Schowgurow v. State,* 240 Md. 121 and its related decisions. On 10 March 1966 each elected to have the indictment against him dismissed. They remained in custody, incarcerated in a penal institution of this State under other convictions, Marion Montgomery serving a sentence of 10 years imposed 18 August 1965 and Gary Montgomery serving a sentence of 5 years imposed 28 June 1965. Each appellant was presented and reindicted on 22 March 1967. The record shows that the capias issued upon presentment was not executed but noted "In Jail" and indicates also that a detainer was filed against each on 28 March 1967. On the day the appellants were reindicted each swore to a motion in proper person captioned "My Special Motion to Nol Prosse", and apparently the motions were mailed on that date to the Chief Judge of the Supreme Bench of Baltimore City. They were referred to Judge J. Harold Grady who transmitted them to the Clerk of the Criminal Court of Baltimore, characterizing them as motions "in the nature of Motions for a Speedy Trial" and directing that they be filed and docketed. The docket entries show them as "Motion for a Speedy Trial filed in proper person" on 29 March 1967. Judge Grady sent a copy of his letter transmitting the motions to the Clerk of the Criminal Court to each appellant and apparently in answer to the construction placed on them by Judge Grady, each appellant swore to an identical

"Motion to Dismiss" on 31 March 1967 which stated that the court was "without jurisdiction pursuant to a speedy trial, as petitioner did not request a speedy trial but a motion to nol prosse in view of the State failed to comply with Article 21 Md. Const., for over fifteen months. This is unconstitutional— State is without jurisdiction. He now motions that charges be dismissed immediately and without delay." These motions are in the record but do not appear as filed in the docket entries. On 4 April 1967 the appellants were brought into court for arraignment and arraignment was postponed until counsel was appointed for them. Appearance of counsel was entered on 11 May 1967. That same day they were in court for trial and a notation on the face of the indictment shows that the case was postponed by mutual consent. Also on 11 May a "Motion to Dismiss Indictment" was filed on behalf of each appellant stating as the ground therefor that the indictment "did not comply with the directive from the Court of Appeals in that your Petitioners were to be re-indicted within a reasonable time." A document entitled "Open Memorandum," dated 22 May 1967, was prepared in proper person, signed by each appellant and addressed to Judge Grady, stating that they had been denied a speedy trial and complaining about their counsel and apparently requesting that other counsel be appointed. Judge Grady wrote them on 7 June 1967 that the motion for a speedy trial had been sent to the Clerk of the Court and the State's Attorney, informed them that trial had been set for 28 June 1967 and advised them to bring their motions for a speedy trial to the attention of the trial judge at the time of trial. This document appears in the docket entries as a motion for a speedy trial filed 7 June 1967 as to Gary Montgomery, but it was signed by each appellant and clearly was submitted on behalf of both. On 28 June 1967 the case came on for trial before Judge Thomas J. Kenney, presiding in the Criminal Court of Baltimore and at the appellants' request a hearing was held on the issues of denial of a speedy trial and dismissal of the indictment in order to dispose of them prior to a trial on the merits.

At the hearing no witnesses were offered or evidence adduced. The appellants did not attempt to show that they were in fact prejudiced or that there was a strong possibility that their de-

fense was hampered by delay in their trial. They relied on the history of the case as shown by the record to support their contentions arguing that the indictment against them should be dismissed because the State, in re-indicting them, took more than a reasonable time allowed it in the order of remand of the Court of Appeals and because they were denied a speedy trial. The State's explanation for the delay in re-indictment seemed to be, in the words of the hearing court, "that the *Schowgurow* decision (11 October 1965) caused havoc in the State's Attorney's office in Baltimore City, and that as late as January of 1967, there were some 240 cases still awaiting re-indictment because the defendants had requested it, and at least another 100 cases that were pending on appeal, apparently in various situations. This it was stated, coupled with the 4,000 or 5,000 cases handled in the normal course of business in the office might have resulted in this particular case being mislaid and overlooked for a period of time". The hearing judge denied all motions to dismiss the indictment by order of 28 September 1967 for reasons stated in a carefully considered and thorough memorandum accompanying the order.

On appeal from the order [1] the appellants contend that the court erred in denying the motions to dismiss the indictments for the reasons that:

I the delay in re-indictment constituted:
    1) a violation of the order of remand of the Court of Appeals; and
    2) a denial of a speedy trial.
II the delay in trial from the date of the original indictment constituted a denial of a speedy trial.

I

1) The order of the Court of Appeals remanding the case for further proceedings provided in part here relevant:

"In the event that the appellant(s) should exercise the right to challenge the unlawful organization of the

---

1. An appeal will lie, prior to a trial on the merits, from a denial of a motion alleging a violation of the constitutional right to a speedy trial. *Brown v. State*, 2 Md. App. 388, 393; *Allen v. State*, 1 Md. App. 249, 252.

> grand and/or petit jury, the motion shall be granted and the present conviction thereby set aside; and the State shall be allowed a reasonable time to refer its charges to a properly constituted grand and/or petit jury for a criminal prosecution".

The Court of Appeals did not designate a specific period within which the State was to refer its charges to a properly constituted grand jury but allowed a "reasonable time" for it to do so. What is a reasonable time depends on the circumstances present in a particular situation. We cannot close our eyes to the problems, administrative, legal and practical, confronting the prosecuting authorities as a result of the *Schowgurow* decision, and especially in Baltimore City where they were impressed upon a normal heavy case load. All the defendants entitled to make an election under the decision could not be afforded the opportunity to do so at the same time and all who elected to invalidate their indictments returned by an improperly constituted grand jury or to void their trials by reason of conviction by an improperly constituted petit jury could not be forthwith reindicted and retried. Even after procedures were established to comply with the decision some selectivity in the order of priority was inevitable and we cannot say that it was improper to give a lower priority to those incarcerated by reason of a prior conviction of non-related crimes than to those in custody or on bail only on the offense for which the indictment or trial had been invalidated. We think the period from 12 January 1966, when the order of remand was issued, to 10 March 1966, when the appellants were afforded the opportunity to elect under *Schowgurow* was clearly reasonable. And while we cannot condone the case being mislaid or overlooked, if in fact it was, we agree with the finding of the hearing judge that the period from 10 March 1966 to 22 March 1967, when they were reindicted, was not unreasonable under all the facts and circumstances. We note that the appellants remained silent from the date of their election to invalidate the indictment to the date they were indicted, although they could have sought an immediate trial, if they desired it, under the provisions of Md. Rule, 709. And we note further that the order of remand provided no sanction upon non-compliance by the State. We cannot

presume that the Court of Appeals intended the sanction to be dismissal of the charges. We think it fair to assume that the Court of Appeals couched its order in terms of "a reasonable time" rather than a designated time because it foresaw the inherent problems. We have no doubt that upon request to the authorities action to obtain indictment would have been given a higher priority. It may be argued that if the State desires to obtain an indictment it must take the requisite action to do so but the argument loses some force when made by an accused simply standing mute during a delay of which he later complains. Justice is the servant of the public as well as the accused and by the rationale of Rule 709 it is recognized that some burden is properly on the accused who seeks an immediate trial. We hold that there was no violation of the order of the Court of Appeals compelling dismissal of the indictment.

2) The Court of Appeals and this Court have held in cases where the contention of denial of a speedy trial stemmed from delay in indictment that the answer is that until the Grand Jury acted there was no case to be tried. *Keyes v. State,* 236 Md. 74, 81; *Osborne v. State,* 3 Md. App. 161, 163. See *Stevenson v. State,* 4 Md. App. 1, 11; *Fabian v. State,* 3 Md. App. 270, 285, note 6. The appellants urge that *Miller v. State,* 239 Md. 136, *Price v. State,* 235 Md. 295 and *Brown v. State,* 1 Md. App. 571 cited in *Osborne* are not factually apposite and thus do not support either its holding or its rationale. But those cases accept the general rule stated in *Keyes* which is factually apposite. In *Keyes* the accused was apprehended and taken in custody on a juvenile warrant on 14 November 1961. Shortly thereafter, upon being taken before the juvenile court, it waived jurisdiction and ordered him held for regular criminal procedure. He was given a preliminary hearing before a magistrate and held for action of the grand jury. In December 1961 after a mental examination by Spring Grove State Hospital he was released on bail.[2] Through some inadvertence in the office

---

2. The appellants were committed to the custody of the Warden of the Maryland Penitentiary in default of $40,000 bail upon their election to invalidate the indictment on 10 March 1966. But as stated they were then serving sentences imposed on convictions of another offense and were incarcerated during the period of which they complain for that reason.

of the State's Attorney his case was not presented to the grand jury until November 1962 and he was indicted on 9 November 1962. It was in disposing of the contention that the delay for the period December 1961 to November 1962 denied him a speedy trial that the Court said that "until the Grand Jury acted there was no case to be tried", citing *Reddick v. State,* 219 Md. 95. We do not depart from the rule stated in *Keyes* and *Osborne* and are not persuaded to the contrary by *Pitts v. North Carolina,* 395 F. 2d 182 (4th Cir. 1968), or *Hanrahan v. United States,* 348 F. 2d 363 (D. C. Cir. 1965) cited by the appellants to support their allegation that delay is not computed from the date of the offense nor the date of the indictment but from the formal initiation of criminal proceedings, for example the swearing out of the arrest warrant or the arrest. But in *Pitts* there was a delay of almost 16 years between the initiation of the prosecution and the conviction for armed robbery during which period the authorities knew the whereabouts of the accused at all times. The accused did not know that a detainer had been placed against him until more than 7 years after an arrest warrant was sworn out and the detainer placed and no attempt was made to bring him to trial until almost 16 years later. He testified that he was unable to recall where he was at the time he was alleged to have committed the crime. In *Hanrahan* the defendants were indicted for mail fraud in the Puerto Rice District, the case was transferred to the District of Columbia for trial and after a trial date was scheduled, after nearly 4 years delay, they were re-indicted, charging the same mail scheme but different mailing dates. The court rejected the contention that any delay should be computed only from the date of the second indictment, but it remanded the case for a finding whether the delay attributable to the prosecutor was necessary for a fair and just prosecution and if it was not, prejudice to the defendants would be considered in determining the violation of Sixth Amendment rights. We consider those rulings in the frame of reference of their facts. Nor do we feel compelled to depart from the rule followed in this State by the opinion in *Smith v. United States,* 360 U. S. 1. There the issue was not the denial of a speedy trial and the quote therefrom in the appellant's brief was not only dictum but circumscribed by its language.

"* * * if, contrary to sound judicial administration *in our federal system,* arrest and incarceration are followed *by inordinate delay* prior to indictment, a defendant may, *under appropriate circumstances,* invoke the protection of the Sixth Amendment".
(emphasis added.) p. 10.

Under no circumstances in the instant case would it be proper to compute the time in considering delay from the time of their initial prosecution for they were then tried and convicted without complaint as to delay. And if delay is computed from 10 March 1966 when they elected to invalidate their convictions, we do not think the delay inordinate or the circumstances appropriate to invoke the Sixth Amendment even if we followed the rule urged by the appellants.

Adhering to the rule that until the grand jury acted [3] there was no case to be tried and thus there could be no denial of a speedy trial, does not stand a defendant defenseless against unreasonable, oppressive and capricious delay on the part of the State in obtaining an indictment. Not only does the defendant, in appropriate circumstances, have means to obtain an early trial, if he desires to invoke them, under Md. Rule, 709 and Md. Code (1967 Repl. Vol.) Art. 27, § 616A-S (Interstate and Intrastate Detainers) but such delay may constitute a denial of due process of law, even though we find no such denial in the facts and circumstances of the instant case.

We hold that the delay in obtaining reindictment was not a denial of a speedy trial.

## II

As we understand the contention of the appellants they do not urge that delay in trial from their reindictment, standing alone, constitutes a denial of a speedy trial, but they argue that this period should be considered along with the entire delay from the date of their original indictment and that the resulting period of almost 4 years constituted such denial. But it is only that delay which can reasonably be charged to the State that is computed in determining whether a defendant has been denied

---

3. The grand jury may act within the applicable period of limitations. *Osborne v. State, supra,* 163.

a speedy trial. *Stevenson v. State, supra,* 11. We have stated that the period from the original indictment to 10 March 1966 when the appellants invalidated their convictions cannot be charged to the State and we have found that from the period 10 March 1966 to 22 March 1967 when they were reindicted cannot be considered in determining whether a speedy trial was denied because during that period there was no case to be tried. There remains to be considered only the period commencing 22 March 1967 to date. Delay in trial for this period cannot be charged to the State as it was ready for trial within such time after the reindictment that there was no delay in the constitutional sense. Further such delay was not caused by the State. Action was taken for the appointment of counsel for them upon postponement of their arraignment on 4 April 1967, counsel was appointed with reasonable promptness [4] and delay in trial henceforth was by the appellants' own making.

Considering the length of the delay, the reasons for the delay, prejudice to the accused [5] and, with regard to the period from reindictment, waiver by the accused, we hold that the appellants were not denied a speedy trial.

> *Order denying the motions to dismiss the indictment affirmed.*

---

4. Appearance of counsel was entered 11 May 1967 but it appears that the appointment was made prior to that date.

5. The hearing judge noted: "An examination of the transcript at the original trial discloses that the Defendants elected to have their case tried before the Court without a jury, and, in addition, that the Defendants adduced no testimony whatsoever. Neither defendant took the stand and neither Defendant called any witnesses in his own defense."