## THOMAS J. McCARGO AND BERNIE C. HUNTER
## *v.* STATE OF MARYLAND

[No. 645, September Term, 1974.]

*Decided May 27, 1975.*

The cause was submitted on briefs to ORTH, C. J., and MENCHINE and MOORE, JJ.

Submitted by *Gary Huddles, Assigned Public Defender,* for appellants.

Submitted by *Francis B. Burch, Attorney General, Albert Gallatin Warfield, III, Assistant Attorney General, Milton*

B. Allen, *State's Attorney for Baltimore City* and *William Giuffre, Assistant State's Attorney for Baltimore City,* for appellee.

MOORE, J., delivered the opinion of the Court.

Appellants, Thomas J. McCargo and Bernie C. Hunter, pleaded not guilty to an eight-count indictment and were tried jointly in a bench trial in the Criminal Court of Baltimore, the Honorable Albert L. Sklar presiding. McCargo was found guilty of robbery with a dangerous and deadly weapon and use of a handgun in the commission of a crime of violence for which he was sentenced to a total of 17 years. Hunter was found guilty only on the first count of robbery with a dangerous and deadly weapon for which he received a 12-year sentence.

The appeal is based on three contentions, namely that (1) the court erred in refusing to grant a mistrial because the defendant McCargo was at one point brought into the courtroom in handcuffs and because there was a newspaper article, over the weekend recess, referring to this defendant's bail having been revoked; (2) an improper foundation was laid for the admission of certain Department of Motor Vehicles' records; and (3) there was insufficient evidence to sustain a guilty verdict.

There was evidence produced by the State from which the trier of fact could determine that on July 3, 1973, Mrs. Helen Bush, a school teacher in the Baltimore City School System, was walking east on Boyd Street at about 1:30 p.m., having just cashed her paycheck for $347, of which she had $272 in cash and the balance in money orders. A yellow car slowed down beside her. A man got out and went towards her with a silver gun in his right hand. Mrs. Bush attempted to flee but her attacker grabbed her from behind, knocking her down on the sidewalk and ran off with her purse, containing the $272 cash. The victim got up, followed the car, and was able to discern the license number which she repeated aloud to herself until she could write it down on a slip of paper. She clearly described the clothing worn by the gun-wielding

assailant — orange pink shirt, shiny material, dark blue pants, new tennis shoes, with a purple ornament in his Afro-style hair — as well as the brilliant red shirt worn by the driver of the car, the door having remained wide open during the occurrence.

The police responded to the scene and canvassed the area with Mrs. Bush to find the "yellow" car with Maryland tags ND 7324, the number she had seen and copied. The car was soon spotted and Mrs. Bush identified the driver and passenger as her assailants not only because they were wearing the identical clothing but also because she had "looked very hard at their faces while I was standing there." The two subjects were arrested and a total of $247 cash was recovered from them, which the police subsequently returned to the victim.

Appellants' first argument is based on the trial court's denial of two motions for mistrial based on related matters. The first motion was made by defense counsel on March 15 when appellant McCargo returned to the courtroom *handcuffed* after he had apparently been taken, at the State's request, to another courtroom during an hour and a half recess of the principal trial. Although the trial court was not aware of the defendant's restrained condition until defense counsel brought it to his attention, a mistrial based on a violation of the defendant's "presumed innocence" was denied for the following reason:

> "[T]his is a Court trial. And this Court hears the testimony as one who understands the distinction between what is evidence in this case, and what is not evidence in this case."

When the trial reconvened, after the weekend recess, on March 18, defense counsel renewed the motion for a mistrial based on the aforementioned ground and upon the additional ground that an article had appeared in the Baltimore (Morning) Sun over the weekend concerning a bail revocation affecting McCargo. The trial court immediately interjected that:

> *"I did not read that article that you are going to*

*make reference to.* I saw headlines, which said, 'Bail revoked.' I thought it might have something to do with Mr. McCargo and deliberately did not therefore read the body of the news article. So, I still do not know exactly why or what happened in that regard." (Emphasis added.)

Appellant's attorney again urged a mistrial based on improper and prejudicial inferences the trial court could have made by combining the factors of McCargo's return to court, on March 15, handcuffed, and the subsequent newspaper headline to the effect, "Bail revoked." The court again denied the motion, stressing the difference between a court and jury trial and its ability to "discern the difference between what is good evidence, proper evidence attesting to the defendants' guilt in the course of a trial" and what is not. The trial court did not know the explanation for McCargo's being handcuffed which, it noted, could have been for various reasons; and the court, quite properly and advisedly, refused to hear from defense counsel concerning the details of the other proceeding. Furthermore, the court's statement on the record that he had deliberately refrained from reading the newspaper article forecloses that issue.

We find only a proper use of discretion in the denial of these motions by the trial judge. *Johnson v. State*, 18 Md. App. 571 (1973).

The appellants' second contention is that the trial court erred because certain records of the Department of Motor Vehicles were received in evidence without "proper foundation and certification." First, the argument is made that a subpoena *duces tecum* personally served on an employee of the State Motor Vehicle Administration by the Assistant State's Attorney, the prosecutor in this case, was not properly issued.

The Motor Vehicle Administration employee was personally served with the subpoena by the Assistant State's Attorney when he delivered the records to the latter's office. Since *duces tecum* may be part of a summons to a witness, Maryland Rule 115 a, and a summons for a witness may be

issued "without an order of court by a competent private person over 21 years of age, including an attorney of record," Maryland Rule 116,[1] the subpoena was properly issued in this manner to Mr. Orndoff. Maryland Rule 116 c 3, providing that failure to make proof of execution shall not affect the validity of execution, is a sufficient answer to appellants' complaint that no copy or return was filed.

Appellants' other claims of irregularity are substantially answered by Art. 66½ § 2-311.1 (b), Vehicle Laws, Maryland Code:

> "Whenever any subpoena duces tecum is issued to the Commissioner or any official of the Department for the production in any proceeding in court of a copy or photostat of the ... records  .. of the Department, *it shall not be necessary for the Commissioner or official of the Department to whom the subpoena is issued or for any employee of the Department to appear personally; and a copy or photostat duly certified of the ... records ... shall be full compliance with the subpoena.*" (Emphasis added.)

Mr. Orndoff, as a field agent who delivers subpoenaed records, was an "official of the Department" to whom the subpoena *duces tecum* was issued. He did not therefore have to establish his own familiarity with the registration records or a chain of custody since there is no requirement that the subpoenaed official or employee appear personally and a copy or photostat duly certified is "full compliance." Nevertheless, the trial court asked the witness a series of questions concerning the procedure that is followed when a request is made to ascertain the identity of the registered owner of a motor vehicle. The responses disclosed that the "usual practice" was followed in the instant case, including the making and certification of the photostat. The record copy was properly admitted into evidence.

The third issue raised on appellants' behalf goes to the

---

1. This quotation is from Rule 116 prior to the July 1974 amendment.

sufficiency of the evidence to sustain the verdicts of guilty. On our independent review of the trial record, we find that the evidence, heretofore summarized, showed directly or supported a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of appellants' guilt of the offenses charged. *Williams and McClelland v. State*, 5 Md. App. 450 (1968).

The trial court's findings, amply supported, were as follows:

> "The Court was very impressed with the testimony of Mrs. Bush, who had the opportunity and clarity of vision to identify both defendants participating in this crime."

> \* \* \*

> "Mrs. Bush also testified that she ran after the car as it drove away. And she was able to get the license number ND 7324. She also described the car as cream or yellow with a black top.

> "Her testimony is corroborated by the testimony of Mr. Donald Brown, an employee of the C and P Telephone Company, who said that at about 1:30 p.m. he was in the 800 block of Boyd Street which is the same alley between Parkton and Freemont Avenues. Mr. Brown described the car as a yellow car with a black top, two-door Ford, going east. The car, with two passengers, was only about two feet from him. And he was able to see the license tag also.

> "Officer James Wiley responded to the scene as a result of a police radio call at 1:34 P.M. And after receiving certain information from Mrs. Bush, and then the Commissioner of Motor Vehicles, went to the area of the 1400 block of North Fulton Avenue. At that time, stopped for a stop sign, he saw both defendants in a yellow and black 1969 Ford automobile with that same license number ND

7324. There was this purple ornament in Mr. McCargo's hair, which was his purple comb, which had been admitted into evidence as State's Exhibit Number 2."

With respect to appellant Hunter's criminal agency, we observe that Mrs. Bush specifically identified Mr. Hunter as the driver of the car who "looked at her" while the crime was in progress and who effectuated the getaway. Although she testified that Mr. McCargo held the pistol, the participation of appellant Hunter, above described, was that of a principal to the crime of robbery with a dangerous and deadly weapon.

We find no basis for appellants' claims that their convictions should be set aside. Maryland Rule 1086.

*Judgments affirmed.*